## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 22-cr-15 (APM)-7 |
| | ) | |
| JOSEPH HACKETT, | ) | |
| | ) | |
| Defendant. | ) | |

### JOSEPH HACKETT'S OMNIBUS MOTION *IN LIMINE*

Defendant, Joseph Hackett, by and through his undersigned counsel, Angela Halim, Esq., hereby respectfully submits this Omnibus Motion *in Limine* in advance of his December 5, 2022 trial in the above-captioned matter.

### I.       INTRODUCTION

Mr. Hackett, along with co-defendants Roberto Minuta, David Moerschel, and Edward Vallejo, will proceed to trial on December 5, 2022, following the criminal trial of remaining co-defendants Stewart Rhodes, Kelly Meggs, Jessica Watkins, Kenneth Harrelson, and Thomas Caldwell.  All nine individuals are charged in the Indictment returned on June 22, 2022, with seditious conspiracy, conspiracy to obstruct an official proceeding, obstruction of an official proceeding, and conspiracy to prevent an officer from discharging any duties.[1]  Mr. Hackett is also charged with destruction of government property and tampering with documents or proceedings.[2]

The Court has made several evidentiary determinations before and during the pendency of the ongoing, first trial, hereinafter referred to as the "Rhodes trial."  As Mr. Hackett, through

---

[1] 18 U.S.C. §§ 2384, 1512(k), 1512(c)(2), 372, and 2, respectively.
[2] 18 U.S.C. §§ 1361, 1512(c)(1), and 2, respectively.

counsel, observed and/or reviewed transcripts of the Rhodes trial, it became clear that his approach to the evidence and the government's case differs, in many respects, from defense counsel in the Rhodes trial.  As such, Mr. Hackett respectfully seeks to revisit certain rulings the Court made in connection with the Rhodes trial.  He is mindful of the need for efficiency and economy and will make every effort to streamline his evidentiary arguments where the Court has already made an admissibility determination.  Mr. Hackett has endeavored herein to be as precise as possible, with cites or references to discovery materials, trial transcripts, and/or government witness disclosures; however, he notes that counsel for the government has not yet provided an exhibit list, witness list, or list of statements and admissions that has been tailored to Mr. Hackett's trial.  Counsel for Mr. Hackett and the government have been in frequent communication regarding materials specific to the second trial, and Mr. Hackett anticipates that he will receive supplemental information from the government this week.  Mr. Hackett respectfully reserves the right to supplement his pretrial motions *in limine*, as necessary, upon receipt and review of additional information.

## II.      **NOTICE OF INTENT TO JOIN MOTIONS *IN LIMINE* ALREADY FILED**

Mr. Hackett submits notice of his intent to join Motions *in Limine* filed by counsel for Jessica Watkins, Thomas Caldwell, and Roberto Minuta as outlined below.

-   ECF 216, Jessica Watkins Opposition to Government's Motion *in Limine* Pursuant to
    FRE Rule 404(b).  Ms. Watkins asked the Court to exclude evidence relating to Jeremy
    Brown's possession of explosives and Jessica Watkins's possession of bomb-making
    instructions.

- ECF 217, Thomas Caldwell's Opposition to the Introduction of Certain Trial Evidence. Specifically, Mr. Hackett joins Mr. Caldwell's request to preclude introduction of the following:

  o Notebook page with handwritten note, "death list," recovered from Calwell's residence;

  o Caldwell's attempted purchase of a .380 caliber handgun;

  o Evidence regarding Caldwell's alleged attempt to have another person build firearms;

  o Any evidence involving firearms, ammunition, and/or accessories by Rhodes or others after January 6, 2021;

  o Evidence of alleged explosives possessed by unindicted co-conspirator Jeremy Brown;

  o Evidence of sawed-off shotguns and grenades allegedly recovered from Jeremy Brown's residence and/or Recreational Vehicle on or about September 1, 2021; and

  o Evidence regarding "bomb making instructions" recovered from Jessica Watkins's residence

- ECF 386, Roberto Minuta's Motion *in Limine* No. 1 – Witness Narration of Video and Documentary Evidence.

## III.    MOTIONS *IN LIMINE* TO PRECLUDE ADMISSION OF CERTAIN EVIDENCE AND TESTIMONY

As set forth below, Mr. Hackett seeks to bar the introduction of certain evidence or witness testimony.

### a.  Mr. Hackett objects to the admissibility of any compilation presentation or "montage" video created by the government

During the Rhodes trial, the government has moved to admit – and the Court has received into evidence – numerous exhibits that the government created by taking excerpts or snippets of

material from various sources and compiled into one presentation, oftentimes including additional multimedia features and graphics. Mr. Hackett objects to the admissibility of any montage or compilation created by the government, including, but not limited to Government Exhibits 1500-1510, 1515-16, 1503 ("Organization Chart"). As Mr. Hackett observed or followed the government's case-in-chief in the Rhodes trial, it became clear that the government is relying much more heavily on its manipulation of evidence, twisted and intentionally placed to reflect its argument and theory of its case, than the actual evidence collected during its investigation. Mr. Hackett objects to the Court receiving into evidence any proposed exhibit that contains argument or a manipulation of the evidence rather than the evidence itself. Exhibits such as 1500 are 1) not a proper summary as contemplated by Federal Rule of Evidence ("FRE") 1006, 2) they are argumentative, and 3) any probative value of the government-created presentation is substantially outweighed by the danger of misleading the jury.

At most, these compilations or government creations may be used as demonstratives or illustrative presentations to aid the jury in following the testimony of respective witnesses. But to receive these items as _evidence_ in this case and allow the jury to review or scrutinize them during deliberations is wholly improper. Given the expected length of trial and the volume of statements and video content, it is understandable that the government seeks to organize the material to aid the jury's understanding of the evidence; however, those aids should not be mistaken for actual evidence. The evidence is the underlying content the government used to manufacture its presentation, and Mr. Hackett is going to insist that only relevant _evidence_ be admitted against him at his trial. Presumably, the government is admitting such compilations and presentations pursuant to FRE 1006; however, exhibits such as 1500-1510 (and many others) are not proper summaries within the meaning of that rule. The proffered exhibits are government

4

creations, cobbled together from a variety of sources, that contain imagery, words, and other depictions <u>not</u> contained in the underlying content itself; some present statements or video clips out of sequence, creating a misimpression as to the accurate timeline.  For example, in government exhibit 1500, one slide shows a 2:37 p.m. phone call and the next slide shows imagery of Mr. Hackett and others walking on or near the capitol steps at 2:35 p.m., creating the misimpression that the phone call occurred before individuals began walking on or near the capitol steps.

In short, such exhibits are nothing more than government argument and are inadmissible as trial exhibits.  Mr. Hackett does not generally object to the use of compilations as demonstrative aids during witness testimony[3], if that witness created the compilation; Mr. Hackett does, however, object to showing the jury any demonstrative compilation during the government's opening statement.

FRE 1006 provides, in relevant part, that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Summaries of voluminous records are only admissible pursuant to this rule if they are "accurate and nonprejudicial."  *See United States v. Lemire*, 720 F.2d 1327, 1348 (D.C.Cir. 1983).  There are strict limits on the role of summary witnesses and documents.  The trial court must ensure that the witness or document does not "usurp the jury's fact-finding function by summarizing or describing not only what is in evidence but also what inferences should be drawn from that evidence."  *United States v. Cooper,* 949 F.3d 744, 750 (D.C. Cir. 2020).  "Another danger to be guarded against is that the jury will treat summary

---

[3] Mr. Hackett reserves the right to object once he has seen all materials prepared by the government specific to his trial.

testimony as 'additional evidence or as corroborative of the truth,' rather than just a compilation of existing evidence." *Id.* at 750 (quoting *Lemire*, 720 F.2d at 1348). For a summary of documents to be admissible, "the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it." *United States v. Fahnbulleh*, 752 F.3d 470 (D.C.Cir. 2014)(citing *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C.Cir.2008)).

There can be no question that the government's proposed compilation exhibits go far beyond accurately summarizing voluminous content and instead are designed to instruct the jury what inferences to make about the underlying content. Additionally, with much of the video evidence, the government cannot meet the prong of FRE 1006 which requires a finding that the underlying content is so voluminous that it "cannot be conveniently examined in court." The government can easily play the relevant portion of a source video or audio recording without presenting it through a compilation exhibit. The same goes for Signal messages and statements or writings from other sources; the government has (or will soon have) all the statements it intends to introduce, already compiled into an excel spreadsheet with no additional commentary, markings, or other argumentative elements.

Although Mr. Hackett was not able to find case law on point, he further argues that the government's compilation exhibits are improper summaries because they collapse multiple categories of data or evidence into one argumentative presentation. For example, the government does not seek to admit one summary to prove the content of Signal messages and a separate summary to prove the content of video or audio recordings; rather, the government has

chosen selective statements or messages, selective video recordings, additional evidence drawn from a variety of other sources, and added its own "helpful" content like a diagram of the capitol building into one, single presentation with flashy multimedia elements. FRE 1006 does not permit introduction of such material to prove the content of the underlying evidence.

With respect to Government exhibit 1503, the "organization chart" that has been reproduced on an over-sized posterboard, Mr. Hackett objects to its admission as an exhibit for the same reasons as set forth above, and he further objects to the government showing it to the jury during opening statements. He does not object to its use as a demonstrative during witness testimony or in closing arguments.

### b. Mr. Hackett objects to the admission of all hearsay statements made before December 19, 2020, and after January 6, 2021.

The government alleges that a conspiracy involving co-defendants who will not be tried alongside Mr. Hackett started to form soon after the November 3, 2020 presidential election. Mr. Hackett anticipates that the government will seek to introduce out-of-court statements made by indicted and unindicted co-conspirators during the timeframe of the alleged conspiracy pursuant to FRE 801(d)(2)(E). "Statements by an alleged co-conspirator may be received in evidence against the defendants on trial if there is substantial evidence, independent of those statements that (1) a conspiracy existed, (2) the co-conspirator and the defendant against whom the statement is offered, were members of the conspiracy, and (3) the statements were made in furtherance of the conspiracy." 617 F.2d 831, 844 (D.C. Cir. 1980)(emphasis added).

Mr. Hackett does not yet have the government's list of statements or writings that it intends to introduce at Mr. Hackett's trial; however, based upon a review of Rhodes trial transcripts and the list of statements created by the government for the Rhodes trial, Mr. Hackett can generally describe categories of statements to which he objects.

7

o   Any and all out-of-court statements before December 19, 2020, and after January

6, 2021.  Prior to December 19, 2020, there is no evidence that Mr. Hackett was

involved in any planning or agreement aimed at disrupting the transfer of

presidential power.  The government maintains – and the Court appears to accept

– that evidence shows by a preponderance of the evidence a seditious conspiracy

was formed prior to December 19, 2020; Mr. Hackett disagrees, but even

accepting that as true, there does not exist "substantial evidence, independent of

the statements" that Mr. Hackett was a member of that alleged conspiracy.  Mr.

Hackett acknowledges the existence of facts that will likely lead the court to

conclude that the FRE 801(d)(2)(E) predicate requirements have been met as of

December 19, 2020.  He will vigorously dispute that any conspiracy existed at his

jury trial, but he understands as a matter of law that the court will likely conclude

that statements of co-conspirators between December 19, 2020, and January 6,

2021, are admissible against Mr. Hackett pursuant to FRE 801(d)(2)(E).

o   If the Court disagrees with Mr. Hackett and finds by a preponderance of the

evidence that he was a member of the alleged seditious conspiracy prior to

December 19, 2020, that cannot be true for the other two charged conspiracies,

conspiracy to obstruct an official proceeding (18 U.S.C. § 1512(k)) and

conspiracy to prevent an officer from discharging any duties (18 U.S.C. § 372).

The evidence is clear that there was no discussion, planning, or contemplation of

attendance in DC on January 6, 2021, prior to former President Trump's tweet on

December 19, 2020, regarding a rally he intended to host on January 6th.  As such,

Mr. Hackett will seek a limiting instruction that any statements admitted by the

8

Court of alleged co-conspirators prior to December 19, 2020, may not be considered in connection with counts two and four.

o   Statements between Stewart Rhodes and Kellye SoRelle.  At the Rhodes trial, the government introduced statements between Rhodes, SoRelle, and "two other acquaintances."  *See* Gov't Opp. To Def. Mot. for Judgment of Acquittal, ECF 383, at p. 10; *see also*, Gov't Exhibit 6748.  The government contends that "[a]s early as December 10, Rhodes began expressing in private circles his skepticism that the President would invoke the Insurrection Act and his belief that he and other Oath Keepers members and affiliates would need to take matters into their own hands."  Gov't Opp. at p. 10.  Additionally, the government introduced a January 6, 2021 Facebook live stream SoRelle participated in and Signal chat messages written by SoRelle on January 6, 2021.  Mr. Hackett objects to admission of statements made to or within "private circles" as they do not constitute statements made in further of the alleged conspiracy.  The government's evidence suggests the existence of a separate conspiracy between Rhodes and those in his "inner circle."  While Rhodes was expressing to SoRelle and others privately that he did not think Trump would invoke the insurrection act, he continued to "preach" to the larger Signal chat groups that Oath Keepers should push Trump to do his duty (referring to invocation of the insurrection act) (OK FL Hangout Signal chat, 12/21/20).  Rhodes appears to have said different things to different groups of people, and what he said within private circles – far outside the outer limits of what was foreseeable or knowable to Mr. Hackett – can not be admitted as statements in furtherance of the alleged conspiracy.

9

### c. Mr. Hackett objects to opinion testimony regarding military concepts and moves to preclude the use of certain technical military terms.

From the inception of this case, the government has alleged that some members of the Oath Keepers moved in "stack" formation through crowds outside the U.S. Capitol on January 6, 2021. The government chose that terminology long ago to create a mental image of militaristic extremists, but support for use of that term does not exist in discovery materials or the evidence and the government should be barred from using it at trial. The government's own evidence demonstrates that Oath Keepers described the line formation as a "chain" to move through crowds. *See* 11/9/20 Go To Meeting Transcript.

A "stack," in military parlance, is a formation utilized in offensive exercises (always involving the use of weapons) and other high-risk, dangerous military exercises. To admit testimony, argument, or military terms of art is inappropriate without a proper foundation, and that foundation can only be laid through expert testimony. Essentially, the government seeks to introduce opinion testimony that certain behaviors exhibited by some Oath Keepers on January 6, 2021, were consistent with military procedures, and any such opinion testimony would, by definition, rely on "scientific, technical, or other specialized knowledge within the scope of [FRE] 702." The government has not given notice of any such expert witness and should be barred from asking witnesses to opine regarding whether the Oath Keepers were, in fact, arranged in a "stack" formation on January 6, 2021.

Additionally, Mr. Hackett moves to preclude any agent testimony or opinion regarding military procedures or terminology and any testimony comparing individuals' conduct on January 6, 2021, to military conduct. For example, Agent Moore, on November 3, 2022, while testifying at the Rhodes trial, gave opinion testimony regarding "commander intent." Such testimony is not a proper lay opinion pursuant to FRE 701, and the Court should bar the

10

government from adducing expert opinion testimony regarding military terminology and concepts.

> **d.  Mr. Hackett objects to the admission of certain firearm evidence.**

Mr. Hackett objects to the admission of any physical firearms or photographs of firearms unless the government lays the appropriate foundation through a witness that a particular firearm was, in fact, transported to the Ballston, VA QRF.  Any firearms (or photos of firearms) seized during the government's investigation that were not transported to the QRF are irrelevant. Moreover, unless a witness can identify that a particular firearm was actually at the QRF on or about January 6, 2021, the government should not be able to admit firearm(s) and invite speculation regarding whether it was transported to the DC area.

## IV.   MISCELLANEOUS ISSUES REGARDING TRIAL PROCEDURE

Mr. Hackett raises the following issues and makes the following requests regarding miscellaneous aspects of trial procedure.

- During its opening statement at the Rhodes trial, Mr. Nestler made reference to an "armed rebellion" (Tr. 1083:10), described Rhodes "like a general overlooking a battlefield" (1085:7), and said that "sic semper tyrannis" is what John Wilkes Booth yelled before assassinating President Lincoln (Tr. 1120:15-16).  Each statement is argumentative and inappropriate for an opening statement.   Mr. Hackett asks the Court to instruct the government not to use those phrases and to refrain from making other impermissible argument during its opening statement.

- Mr. Hackett asks the Court to preclude the government from introducing at trial the fact that John Wilkes Booth said "sic semper tyrannis" before assassinating President

Lincoln; aside from being prejudicial and argumentative, it is not relevant to the charges against Mr. Hackett.

- He further seeks to preclude testimony from any witness that the House Recess Emergency Provision was enacted in response to the 9/11/01 attacks on the World Trade Center.  That fact is wholly irrelevant to the charges against Mr. Hackett.

- Mr. Hackett moves for sequestration of all agents who will testify as government witnesses aside from the lead case agent who is permitted to remain in the courtroom and observe all trial proceedings.  During the Rhodes trial, multiple agent witnesses remained in the overflow courtroom and observed all trial proceedings.  Although the government is permitted to have a case agent at counsel table with them, it is unnecessary and unfair for all agents to observe the testimony of all other witnesses and cross examination by defense counsel.

- Mr. Hackett objects to the government calling one witness multiple times during trial. When the government is permitted to call and then re-call that same witness – particularly a "professional" witness such as a government agent – to testify regarding different subject matters, the witness and the prosecutor have an opportunity to continually refine and prepare testimony to account for defense cross examination.  Mr. Hackett objects and moves the Court to instruct the government that other than rebuttal or other unexpected circumstances where justice requires, a witness may not take the stand multiple times during trial.

- Lastly, Mr. Hackett expects that he will ask the Court, on limited occasions, to conduct re-cross examination.  He understands that the Court does not permit re-cross examination; however, it is clear that the government has crafted a scripted performance

with its agent witnesses, and there are occasions where the government asks questions on re-direct examination that could create a misimpression.  If similar circumstances arise in his trial, Mr. Hackett will ask the court for permission to conduct a brief re-cross examination, strictly limited to the scope of re-direct examination.

**V.**     **<u>CONCLUSION</u>**

For all the reasons set forth more fully above, as well as any additional arguments raised at the final pretrial conference, Mr. Hackett respectfully asks the Court to grant his motions *in limine* as outlined herein.

Respectfully submitted,

_____/s/ Angela Halim_____
Angela Halim, Esq.,
3580 Indian Queen Lane
Suite 10A
Philadelphia, PA  19129
(215) 300-3229
angiehalim@gmail.com

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.


_____/s/ Angela Halim_____
Angela Halim, Esq.

Dated:  November 7, 2022