UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 22-cr-15 (APM) |
| ) | |
| JOSEPH HACKETT, ) | |
| ) | |
| Defendant. ) | |

### JOSEPH HACKETT'S REPLY TO ECF 392 AND ADDITIONAL OBJECTIONS

Defendant Joseph Hackett, by and through his undersigned counsel, hereby submits this reply to the government's opposition to his omnibus motions *in limine*. Additionally, as Mr. Hackett, through counsel, continued to review transcripts of the *Rhodes* trial, he identified additional objections that he wishes to raise with the Court at the final pretrial conference on Wednesday, November 23, 2022.

I.  **Summary Exhibits, FRE 1006**

Regarding summary exhibits, the D.C. Circuit is clear that

> [f]or a summary of documents to be admissible, the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it.

*United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014)(citing *United States v. Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008). Mr. Hackett challenges the government's assertion that its compilation exhibits are accurate, nonprejudicial, and that the underlying documents are "so voluminous as to make comprehension by the jury difficult and inconvenient." Moreover, the government's compilation exhibits contain argument, reflecting

the government's theory of how the evidence connects and suggesting the inferences it wishes the jury to draw from the underlying evidence, rather than a true summary of voluminous records. Lastly, the government's compilation exhibits, as used in the *Rhodes* trial through various witnesses, operates to lead the witness rather than elicit facts in a proper direct examination, question-and-answer format.

Rule 1006 is an exception to the best evidence rule, and, as such, it operates as a substitute to prove the underlying content of voluminous records. *See United States v. Weaver*, 281 F.3d 228 (D.C. Cir. 2002). Because a summary is accepted by the Court as substantive evidence, Mr. Hackett asks the Court to scrutinize the government's montage and compilation exhibits with particular care. The government is using documentary-style animation and compilation to highlight select excerpts, suggest inferences, make argument, and falsely imply cohesion where very little existed in reality, particularly as it pertains to Mr. Hackett. In short, through these montage exhibits, the government is presenting closing argument during its opening statement, and repeatedly throughout its case in chief as it utilizes these exhibits with various witnesses.

By way of just a few additional examples of problematic content in the government's compilation, or montage, exhibits, Mr. Hackett points to the following from Government Exhibit 1500:

- A "key" that appears in the bottom left corner of most of the beginning slides that identifies terms chosen by the government and their corresponding color code: QRF (orange), leadership (green), stack 1 (yellow), Dolan/Harrelson (blue), stack 2 (purple). Nothing about this key is a true summary as contemplated by FRE 1006. By color

coding certain messages, movements, or other evidence, the government is directing the jurors to draw certain inferences and conclusions.

- At the 2 minute, 30 second mark, the screen shows a yellow trail on a map to the left side of the slide and to the right is a list of people, accompanied by a small "headshot" type photo, the government alleges are part of stack 1, which has been color coded yellow. Directly under the list of "stack" 1 individuals, the government excerpts a portion of a Zello chat where co-defendant Jessica Watkins says, "we have a good group. We've got about 30, 40 of us. We're sticking together and sticking to the plan." This slide is problematic for a variety of reasons.
    - First, it creates the misimpression that all of those people outlined above the statement transcribed from Watkins's Zello chat, are either a part of, or otherwise aware of, the fact that Watkins was speaking with strangers on the walkie-talkie type application.
    - Second, at this point, 1:50 p.m. on January 6, 2021, the group is walking from the Ellipse to the Capitol; at the point depicted at the 2 minute, 30 second mark, that group of individuals is not yet at the Capitol, or even on the Capitol grounds. The government claims that a group of individuals marched in "stack formation" up the East steps of the capitol; Mr. Hackett objects to the use of the term "stack formation," but to the extent the court overrules that, the *only* evidence that even arguably supports the use of that term is the image of several individuals walking up the stairs on the East side of the Capitol in a straight-ish line. There is no evidence – none – to suggest that any individuals walked in "stack formation" from the ellipse to the Capitol or at any other point in time. The government's

exhibit, however, creates the impression that "stack 1" (color coded in yellow) was moving in such a way as to warrant use of the term "stack 1" at the time Ms. Watkins made the ascribed statement on the Zello application.

At the final pretrial conference, Mr. Hackett can point to numerous other examples from the government's compilation exhibits that demonstrate 1) they are not proper summaries as contemplated by FRE 1006, and 2) they are prejudicial, argumentative, and suggest unfair inferences. Moreover, because they contain leading elements (e.g., highlighting certain individuals through outlines or adjusting the lighting from the original video, use of arrows or other movement elements, etc.), Mr. Hackett objects to the use of these exhibits as the primary tool on direct examination. They may be appropriate as demonstratives, but only after the government has otherwise elicited the evidence through admissible testimony or exhibits.

## II.     Co-Conspirator Statements, FRE 801(d)(2)(E)

The government cites principally to *Bourjaily v United States*, 483 U.S. 171 (1987) in arguing that out-of-court statements made prior to December 19, 2020, are admissible as non-hearsay statements of co-conspirators pursuant to Federal Rule of Evidence 801(d)(2)(E). The D.C. Circuit has had occasion to examine admissibility of co-conspirator statements after the Supreme Court's ruling in *Bourjaily*. *See, e.g., United States v. Gewin*, 471 F.3d 197 (D.C. Cir. 2006). There, this Circuit said the following:

> Rule 801(d)(2)(E) authorizes the admission of an out-of-court statement 'by a coconspirator of a party during the course and in furtherance of the conspiracy.' Where a defendant objects to such an admission, however, the district court must find by a preponderance of the evidence that a conspiracy existed and that the defendant and declarant were members of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175-76, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). Although *Bourjaily* allowed courts to consider the content of the out-of-court statements in making this determination, *id.* at 181, 107 S.Ct. 2775, and left open whether

>such statements *alone* could support the necessary finding, *id.*, our circuit has held that the finding must rest on some independent evidence of the conspiracy. *United States v. Gatling,* 96 F.3d 1511, 1520-21 (D.C. Cir. 1996)(emphasis in original).[1]

The *Gewin* Court reaffirmed this Circuit's requirement, as expressed in *Gatling*, that the Court find the existence of a conspiracy based on something other than just the statement itself. The government notes that the Court ruled in the *Rhodes* trial that the government had adduced sufficient evidence to determine that the conspiracy began in November 2020; however, a finding regarding the existence of a conspiracy is only one prong of what the Court must find before ruling on the admissibility of co-conspirator statements. The court must also make a finding that "the defendant and declarant were members of that conspiracy." *Gewin*, 471 F.3d at 201 (internal citations omitted). In its opposition, the government points to nothing to demonstrate by a preponderance of the evidence that Mr. Hackett was a part of any conspiracy in November and mid-December.[2]

Prior to the *Gewin* decision – but after the *Bourjaily* case in the Supreme Court - this Circuit decided *United States v. Beckham*, 968 F.2d 47 (D.C. Cir. 1992), and also reaffirmed *Gatlin's* requirement that the district court rely on more than the statement itself to make the necessary findings regarding existence of the conspiracy. In doing so, the *Beckham* court focused on whether independent evidence existed to show that the appellant was part of a

---

[1] The *Gewin* court goes on to hold that "the district court properly admitted out-of-court statements upon finding a lawful joint enterprise" in declining to adopt appellant's argument that 801(d)(2)(E) admissibility must be predicated upon a finding of an illegal venture or conspiracy. *Gewin*, 471 F.3d at 202.

[2] Mr. Hackett does not concede that any evidence exists supporting the conclusion that he was a part of any conspiracy; however, he acknowledges as a legal matter that, beginning on or about December 19, 2020, there are facts to support a finding for admissibility of co-conspirator statements.

conspiracy and discussed the relationship between the appellant and the declarant. The Circuit said the following:

> The hearsay statement may be considered in finding that a conspiracy existed, . . . but the statement may not be the sole basis for such a ruling. Under our precedent, there must be independent evidence of a conspiracy as well. But the independent evidence here – mere physical proximity and friendship – does not provide support for inferring that Monroe and Beckham 'had the specific intent to further [a] common unlawful objective.'

*Beckham*, 968 F.2d at 50-51(quoting *United States v. Tarantino,* 846 F.2d 1384, 1392 (D.C. Cir. 1988)(other internal citations omitted). The *Beckham* Court finds that "[t]he record simply discloses no evidence – and certainly no evidence independent from the hearsay statement itself – that would satisfy Rule 801(d)(2)(E)'s threshold requirement that [appellant] and [declarant] be co-conspirators." *Id.* at 51.[3]

For the reasons cited herein, in Mr. Hackett's Omnibus Motions *in Limine*, and any arguments set forth at the final pretrial conference, Mr. Hackett moves the court for a ruling *in limine* that out-of-court statements prior to December 19, 2020, and after January 6, 2021, are not admissible against him at trial.

### III. Mr. Hackett's Objections for Discussion at the Final Pretrial Conference

Mr. Hackett provides the following list of objections he wishes to discuss at the final pretrial conference. For ease of reference, he has also included those objections already submitted in his Omnibus Motions *in Limine*, ECF 387.

|    | **Objection** | **When/How Raised** |
|----|---------------|---------------------|
| 1. | Notebook page with handwritten note, "death list," recovered from Caldwell's residence | Joined ECF 217 (Caldwell) |

---

[3] The *Beckham* Court went on to find that the statements at issue on appeal were properly admitted under a different hearsay exception, 801(d)(2)(B), adoptive admission.

| | | |
|---|---|---|
| 2. | Caldwell's attempted purchase of a .380 caliber handgun | Joined ECF 217 (Caldwell) |
| 3. | Evidence regarding Caldwell's alleged attempt to have another person build firearms | Joined ECF 217 (Caldwell) |
| 4. | Any evidence involving firearms, ammunition, and/or accessories by Rhodes or others after January 6, 2021 | Joined ECF 217 (Caldwell) |
| 5. | Evidence of alleged explosives possessed by unindicted co-conspirator Jeremy Brown | Joined ECF 217 (Caldwell) |
| 6. | Evidence of sawed-off shotguns and grenades allegedly recovered from Jeremy Brown's residence and/or Recreational Vehicle on or about September 1, 2021 | Joined ECF 217 (Caldwell) |
| 7. | Evidence regarding "bomb making instructions" recovered from Jessica Watkins's residence | Joined ECF 217 (Caldwell) |
| 8. | Witness narration of Video and Documentary Evidence | Joined ECF 386 (Minuta) |
| 9. | Government Montage or Compilation Exhibits, to include, but not limited to Exhibits 1500-1510, 1515-16, 1503 | ECF 387 (Hackett) |
| 10. | Out-of-Court statements by anyone other than Mr. Hackett prior to December 19, 2021, and after January 6, 2021 | ECF 387 (Hackett) |
| 11. | Request for a limiting instruction that some evidence be considered for certain alleged conspiracies only | ECF 387 (Hackett) |
| 12. | Statements between Stewart Rhodes and Kellye SoRelle, or others in Rhodes's "inner circle" | ECF 387 (Hackett) |
| 13. | Use of the term "Stack" | ECF 387 (Hackett) |
| 14. | Agent testimony or opinion regarding military procedures or terminology and any testimony comparing individuals' conduct on January 6, 2021, to military conduct | ECF 387 (Hackett) |
| 15. | Agent Moore's testimony regarding "commander intent" | ECF 387 (Hackett) |
| 16. | Physical firearms or photographs of firearms seized, unless the government can lay the appropriate foundation that a particular firearm was, in fact, transported to the QRF | ECF 387 (Hackett) |

7

| | | |
|---|---|---|
| 17. | Prohibit the government from making inappropriate argument during its opening statement | ECF 387 (Hackett) |
| 18. | Prohibit the government's use of any summary exhibits during its opening statement | November 21, 2022, Hackett Reply |
| 19. | Preclude testimony or argument regarding John Wilkes Booth and "sic semper tyrannis" | ECF 387 (Hackett) |
| 20. | Testimony that the House Recess Emergency Provision was enacted in response to 9/11/01 | ECF 387 (Hackett) |
| 21. | Request for sequestration of all government agents beyond the lead case agent who is permitted to remain in the courtroom | ECF 387 (Hackett) |
| 22. | Recalling the same witness multiple times | ECF 387 (Hackett) |
| 23. | Permission to conduct limited re-cross, if warranted by the government's re-direct examination | ECF 387 (Hackett) |
| 24. | Preclude reference to or testimony regarding September 2020 Combat Arts Training | November 21, 2022, Hackett Reply |
| 25. | Request to limit government re-direct examination to new, responsive material (as opposed to repeating responsive material that was elicited on direct examination) | November 21, 2022, Hackett Reply |
| 26. | Preclude SA Hilgeman (or any agent) from testifying that Mr. Hackett was at the Comfort Inn hotel on 1/7/21 on the basis of cell site location data from Agent Banks's report (10/17/22 AM Tr. at 3553) | November 21, 2022, Hackett Reply |
| 27. | Preclude government witnesses from opining or speculating what a declarant "meant" when he/she wrote any given message | November 21, 2022, Hackett Reply |

**IV.   Request to Suspend Use of Ankle Monitor for the Duration of Trial**

Mr. Hackett requests the Court enter an order that temporarily suspends the use of his ankle monitor during trial.  He understands that the Court suspended use of Mr. Caldwell's ankle monitor during the *Rhodes* trial, and Mr. Hackett asserts that it is likewise appropriate to do so for him.  Pretrial Service Officers maintain that continuing electronic monitoring via ankle

8

bracelet throughout the trial is necessary; however, Mr. Hackett has at all times been in compliance with the terms of supervised release, and he will be present in the courtroom during trial. There is no need to continue location monitoring during trial, and the monitor could become an issue with getting into the Courthouse in an efficient and timely manner.

Respectfully submitted,

_____/s/ Angela Halim_____
Angela Halim, Esq.,
3580 Indian Queen Lane
Suite 10A
Philadelphia, PA  19129
(215) 300-3229
angiehalim@gmail.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                                       /s/ Angela Halim
                                                            Angela Halim, Esq.

Dated:  November 21, 2022