**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 22-cr-15 (APM)** |
| | ) | |
| **JOSEPH HACKETT** | ) | |

## <u>JOSEPH HACKETT'S SENTENCING MEMORANDUM</u>

Defendant, Joseph Hackett, by and through his undersigned counsel, Angela Halim, Esq.,
hereby respectfully submits this memorandum to aid the Court in fashioning the minimally
sufficient sentence that will accomplish the goals of sentencing as set forth in 18 U.S.C. §
3553(a).  At his sentencing hearing, he will move for a downward variance from the correctly-
calculated Sentencing Guidelines and he will urge the Court to primarily focus on alternatives to
incarceration in fashioning a just and appropriate sentence.  Mr. Hackett respectfully asserts that,
of all the types and kinds of sentences available, at best, incarceration serves merely one of the
enumerated factors set forth at 18 U.S.C.§ 3553(a)(2)(A)-(D)(the need for the sentence
imposed): "to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense." *Id.* at (A).  Given all that Mr. Hackett has endured
since January 6, 2021, the extraordinary weight of collateral consequences will leave an indelible
mark and punish him for the rest of his life.  He has been – and will continue to be -  punished, to
a degree greater than that required by subsection (a)(2)(A).  For reasons set forth in greater detail
below, Mr. Hackett will argue that the minimally sufficient sentence is one consisting of a
combination of alternatives to incarceration; such a sentence, in addition to the punishing effects

of collateral consequences, will reflect the seriousness of the offense, promote respect for the law, and satisfy all the other goals of sentencing.

At this point, following two lengthy trials and a multitude of pre-, mid-, and post-trial motion litigation, the Court has before it a trove of information and argument. As such, Mr. Hackett will focus this memorandum on issues unique to him alone. He joins the legal arguments raised by counsel for his co-defendants with respect to application of the following Sentencing Guideline enhancements: eight-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(1)(B); three-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(2); two-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(3); three-level upward adjustment pursuant to U.S.S.G. § 3B1.1(b).

## I.    MR. HACKETT'S PERSONAL HISTORY AND CHARACTERISTICS

Mr. Hackett is a skilled chiropractor, dedicated to his family and his community, and an avid cyclist and hiker who prefers the outdoors to the indoors. He is kind, gentle, affable, and mild-mannered; but for a brief period of time in 2020, he did not concern himself with politics. He lived simply and humbly in Sarasota, Florida, focused on his wife, daughter, and literally anyone who was in need of chiropractic services. As a former patient and friend, Pat McClain, writes, Mr. Hackett is "a compassionate, caring man and a tremendous healer." Pat McClain letter, attached at A-18. No one who knows him - Mr. Hackett included - can reconcile the person he is with his new life-long label: convicted felon, seditious conspirator.

The photo on the following page shows Mr. Hackett and his wife, posing for a candid family photo with their daugther. (For the purposes of this public filing, Mr. Hackett has cropped out his daughter's image.) *This* is Mr. Hackett:



Mr. Hackett attaches to this memorandum 25 letters authored by members of his community, his friends, and current or former patients.

A-1     Brett Bennett
A-2     Felicia Bennett
A-3     Victoria Berden
A-4     Jordan Cicora
A-5     Dennis Corona
A-6     Nancy Corona
A-7     Tim Cossey
A-8     Colleen Davis
A-9     Nick and Denise Drizos
A-10    Timothy Duncan
A-11    Jim Easley
A-12    Marshall Eckelman
A-13    Stephen Edwards
A-14    Steven Gaeta
A-15    Deena Hackett
A-16    Dianne D. Hagan
A-17    John Marks
A-18    Pat McClain
A-19    Lynne Norwood

A-20   David Seifer
A-21   RuthAnn Stryhas
A-22   Calvin Underwood
A-23   Dr. Kim Walters
A-24   Jodi Webber
A-25   Lois Winkler

A review of the attached letters reveals that Mr. Hackett is a beloved member of his

community who gave generously of his skills and expertise; he is highly regarded as a loving

father and husband, a kind and caring friend, and a selfless person.  Those who know him best

describe his character in the following ways.

> Joe is a kind considerate individual who I know wouldn't hurt
> anybody on purpose. I have trusted him with my children's life on
> several occasions biking and camping in the mountains, staying out
> for days in the wilderness. I have been friends with him for 25 plus
> years we have spent hours and hours and hours together. I feel that
> Joe is a very loving, trusting individual and I would trust him with
> anything that I have that he would need. I know Joe has helped
> many people in this community in the areas that he's been involved
> in.

Brett Bennett letter, attached at A-1.

> My first impression of him was that he was kind, funny, and
> wanted everyone around him to be happy. He was and still is a
> people pleaser. Joe always made you feel like you've known him
> for years even if it was the first time talking to him (and I like that
> because I too have that type of personality.)
>
> A memory that really sticks out to me that shows Joe's kindness
> was a time I went to hang out at their home with my oldest son. He
> and their daughter became little buddies since they were so close in
> age. They played so great together. Some of the neighborhood kids
> said something to my son that upset him. He was crying a little and
> Joe stepped right in and let him know that it was ok to be upset and
> a little sensitive because growing up, he was a sensitive child. It
> made my son (9 at the time) feel so much better and instantly
> calmed him down in a moment where not much I could have said
> would have helped. He really looked up to Joe and took everything
> he said to heart. I really appreciated that moment where a grown
> man showed kindness and vulnerability to a child to help them
> overcome a difficult moment.

4

Victoria Berden letter, attached at A-3.

Jordan Cicora, a close friend of ten years, describes Mr. Hackett as "a loving and attentive father, husband, and friend.  He is selfless and kind, frequently showing compassion to those in physical pain even at times putting other's needs before his own."  She further writes,

> [h]e listens with care when people speak to him; it's a quality he
> exhibits effortlessly.  He is a man of conviction and faith and seeks
> God daily for wisdom, guidance, and discernment.  Joe lives by
> integrity and honesty, even when it's hard.  He has encouraged
> many people through his practice and in his personal life and has
> been generous to our community with his time and talents.  He has
> a zeal for life and works through adversity with grace.
>
> Joe has consistently demonstrated sound character and shows
> mutual respect for the opinions of others.  He is always striving to
> improve himself and motivate others to do likewise while
> remaining humble, sincere, and ready to examine his
> shortcomings.

Jordan Cicora letter, attached at A-4.

Nick and Denise Drizos, family friends and patients, call Mr. Hackett "our beloved kind and gentle doctor," and they describe him as "caring, kindhearted, and gentle."  Nick and Denise Drizos letter, attached at A-9.  Jim Easley, a patient and friend of 15 years, writes that he hopes the Court can see Mr. Hackett as he does, "a responsible, caring individual that would never intentionally do anything illegal, immoral or unethical."  Because, as Mr. Easley continues writing, "[i]t's just not his nature."  Jim Easley letter, attached at A-11.  John Marks, another patient and friend echoes the sentiments of so many others: "[o]ver all, after all this time, my opinion of Joe is that he is kind hearted.  He is always invested in the welfare and health of his friends and patients."  John Marks letter, attached at A-17.

Pat McClain has known Mr. Hackett for 23 years in a variety of capacities.  She describes him, in part, as follows:

> In all of those years of knowing Joe, I have known him to be a
> compassionate, caring man and a tremendous healer.  He is
> extremely concerned with the health and welfare of his patients
> and has never shown any behavior other than that of a doctor, a
> concerned citizen and a good man who is invested in his family,
> his work and community.  He is a loving husband and devoted
> father . . . Joe has always been an asset to those he served, usually
> putting aside his own health and physical care, in order to care for
> the needs of his patients.

Pat McClain letter, attached at A-18.

Fellow chiropractor and friend Kimberly Walters, DC, describes Mr. Hackett as

> a compassionate and genuinely caring provider, who is intelligent
> and takes a great interest in his patient's care and progress.  He has
> a very calm and almost laid back nature about him.  I find him to
> be the same with his family – loving, caring and nurturing and very
> proud of his wife and daughter.

Kimberly Walters letter, attached at A-23.

Patient and friend, Jodi Webber, writes about Mr. Hackett, in part,

> He is one of the kindest, gentlest people I know.  He loves the
> outdoors – hiking, biking, camping, boating, fishing, etc..  He is a
> Christian & loves his country.  He strives to have peace in his life.
> In fact, he stopped reading post several years ago on Facebook
> because it disrupted his peace.  I have never known Joe to break
> the rules or do anything illegal.

Jodi Webber letter, attached at A-24.

Another family friend describes Mr. Hackett:

> Joe has always been laid back and easy going.  I believe Joe gave
> up alcohol many years ago.  I have never seen him drink alcohol,
> get angry or upset with anyone.  He is first and foremost a family
> man.  When he speaks about his daughter, his face aways lights up
> the room.  He takes great pleasure and pride in helping with her
> home schooling . . . I have always found Joe trying to do the right
> thing whether with his family, friends or patients.  He is a very
> gifted and talented Chiropractor and has helped many people get
> out of pain and live pain free.  On more than one occasion I know
> of patients that could not pay him for his services and Joe treated
> them anyway.  He wanted to make a difference and he has for so
> many, myself included.

Lois Winkler letter, attached at A-25.

Mr. Hackett, like all people, has demons to battle.  One of his close family friends,

Felicia Bennett, writes candidly about his personality, that

> Joe has had his issues through the years.  He has addiction
> disorders. He has dealt with alcoholism for years.  He has been
> recovered for a number of years.  I have seen him over the years
> deal with issues it has created with commitment and determination.
> I have never seen him with more regret or self disappointment then
> [sic] over this situation, the grief and trauma his involvement has
> caused himself and his family.  I have seen him mad, very mad.
> But not violent.  He fired a patient one time for being mean to a
> staff member.  He does continue to have that addictive personality.
> He goes rock climbing once then goes out the next day and buys
> all the best gear.  That kind of thing.

Felicia Bennett letter, attached at A-2.

Stephen Edwards, a long-time, close friend, writes that Mr. Hackett "went through

substance abuse issues; it was a tremendous challenge for Joe, but he got through it and has been

sober for many years . . . That was a huge character-building experience for him."  Stephen

Edwards letter, attached at A-13.  As the Court knows from the final Presentence Report

("PSR"), Mr. Hackett completed a drug and alcohol treatment program in 2000 and maintained

his sobriety for over 20 years.  He broke his sobriety at some point in 2022, while he was

awaiting trial, restricted to his home on strict, home-incarceration conditions, and struggling with

the weight and stress of his pending criminal and civil cases.  In the time since his trial, Mr.

Hackett has continued to use alcohol to self-medicate, and he has exhibited signs and symptoms

of depression and anxiety.

Reading the letters submitted by those who know Mr. Hackett best, his skill,

commitment, and passion as a healer is by far the predominant theme.  Mr. Hackett was licensed

by the Florida Board of Chiropractic Medicine as a Chiropractic Physician beginning in 1996.  A

copy of several of his professional certifications is attached at Exhibit E.  Brett and Felicia

7

Bennett, close family friends, credit him with saving Felicia's life.  *See* Brett Bennet letter and

Felicia Bennett letter, attached at A-1 and A-2, respectively.  Brett writes,

> We had gotten to [Mr. Hackett's] house and while we were there
> Felicia suffered a massive Cardiac Arrest.  She proceeded to freeze
> up on Joe and Deena's couch.  Joe was able to diagnose her.  He
> was checking for vital signs and said to me she's having a heart
> attack.  So, he said we need to get her on the floor.  We laid her
> down and Joe quickly called 911.  I could not think and didn't
> know what to do, except for scream at my wife to look at me and
> try to wake her up.  Like I said, Joe dialed 911 got the ambulance
> enroute.  From there he started doing chest compressions and
> keeping her alive for 15 minutes until the EMT's got there at set up
> . . .Without him my wife would have died that day, because I had
> no idea what needed to be done in order to save her life.

A-1, pages 1-2.

Felicia also recalls that fateful day:

> I went into Cardiac Arrest.  My heart stopped.  I died! Right there
> on my dear friends' couch.  Joe immediately began CPR on me
> and continued it while the EMT's were called then eventually
> arrived to take me to the hospital.  Joe Hackett saved my life.  Brett
> had no CPR training, Deena was in the shower.  If Joe had not
> acted quickly my heart would have been stopped for 11 minutes
> while the EMT's were in transit. Joe Hackett saved my life that
> day . . . that is the kind of man he is.  He is a person who cares
> deeply.  He is a healer.  A doctor. . . .
>
> I have seen Joe treat people for free who couldn't afford to pay
> him. (He did that for us for years.) I've seen him reduce his rate for
> people. . . . He is not a doctor for the benefit to him.  He cares.  He
> cares about people.  He would never harm anyone intentionally.

A-2, at page 2.

Felicia also describes when Mr. Hackett treated her infant child:

> I had just had [my 9-10 month old child] to the pediatrician for an
> ear infection.  Dr. Joe told me that many babies have spinal
> subluxations resulting from the trauma of the birth process.  He
> adjusted [him] for the first time that day.  I remember him laying
> my tiny baby gently across his shoulder and lightly touching him
> along his spine with two fingers.  He also started adjusting [my
> five-year child] at around the same time.

*Id.,* at page 1.

Mr. Hackett treated Victoria Berden's father; Ms. Berden writes that "[m]y Dad has been a UPS driver for almost 35 years and has suffered from very painful knees. Joe started treating him without any expectations of payment. All he cared about was helping my Dad and eliminating his pain. He cares so much about other people and truly wants nothing more than to see them get better." Victoria Berden letter, attached at A-3. Marshall Eckelman and his wife were both treated by Mr. Hackett. Mr. Eckelman writes that

> I will not go to another chiropractor because Dr. Joe is knowledgeable and I feel safe with him. He is a good friend and an intuitive, knowledgeable practitioner. His clients feel the same way as to discussions in his waiting room. His patients need him and his expertise, it is very difficult to have a great chiropractor.

Marshall Eckelman letter, attached at A-12.

90-year old Jim Easley calls Mr. Hackett "the best chiropractor [he has] ever known." As someone who began seeing chiropractors at the age of 14 and has experienced chiropractic care all throughout the United States and overseas, Mr. Seifer credits Mr. Hackett with keeping him functioning. *See* David Seifer letter, attached at A-20.

> I have had knee, hip, and shoulder replacements, all accompanied by considerable pre-surgery pain and stress. Joe was there every step of the way demonstrating continued use of his training, research and education combined with understanding and compassion that benefitted me and his many other patients.

*Id.*

Jim Easley writes the following about Mr. Hackett as a healer:

> In my 60+ years of chiropractic treatments – both before and after back surgery in 1992 – I have seen many different chiropractors. Joe is/was one of the best – he has wonderful hands and can feel every misalignment. He is very thorough and will not stop until everything is in proper alignment. As I have gotten to know him better I realize this is how he feels about everything in life. If there is a problem, he tries to fix it. I know he has been a great help to both my daughter and granddaughter, as well as to me on our

> annual winter visits.  Even during times when his allergies made
> life difficult for him he persisted in doing the best job he could.

Jim Easley letter, attached at A-11.

Dianne Hagan, now 80, writes that she wishes Mr. Hackett were still in practice.  "He

helped so many people and his loss to our community is tremendous."  *See* Dianne D. Hagan

letter, attached at A-16.  She further writes about her experience after falling and breaking her

shoulder.  After completing prescribed physical therapy, she was advised that some loss of range

of motion was to be expected and that she had reached "maximum recovery."

> Dr. Hackett and my massage therapist disagreed and told me that if
> I would work on their prescribed exercise regimen they thought I
> could recover completely.  I faithfully followed their directions,
> and to this day I have full range of motion.  This is very important
> in allowing one to reach up to retrieve things from shelves or hang
> clothing in closets.  When reaching is required, I always mentally
> thank both of them for their knowledge and encouragement during
> the lengthy time it took to get my muscles and tendons stretched
> out as they were before the break.  All that help, and he never
> charged me more than the agreed on monthly wellness charge that
> was in place when we met back in 1999.

*Id.*

Not only is Mr. Hackett a gifted and skilled chiropractor, contributing to an improved

quality of life for so many individuals in his community, but he gave generously of his services,

whether people could afford to pay him or not.  Tim Cossey recounts when Mr. Hackett gifted

treatment to his son:

> My son was attending Sarasota Military Academy and was playing
> Lacrosse for the High School team.  As this was stressful on his
> back, I was taking him to Joe for back adjustments on a regular
> basis.  Joe, knowing my financial situation at the time during my
> son's junior year, offered to take care of my son's adjustments at
> no charge as a future graduation gift.  Joe has always been
> empathetic to the needs of others and quick to lend a helping hand.

Tim Cossey letter, attached at A-7.

Colleen Davis explains that Mr. Hackett provided free treatment services to her husband.

> My husband went to see Joe and he started doing a laser treatment
> on his shoulder and told my husband it should alleviate the pain
> within a few visits.  When it did not work right away he told my
> husband that he no longer would charge him for the visits but
> wanted to continue to try the laser treatment.  My husband was
> grateful to be able to continue these laser treatments.  Eventually it
> worked for him.

Colleen Davis letter, attached at A-8.  Lynn Norwood, another former patient, writes,

> I had previously tried a number of other practitioners, with little
> pain relief.  I was very impressed with his skill, and so relieved
> from the pain I had suffered for many years.  Not only that, but he
> was also not the type of doctor that would keep people coming
> back for many months of treatments in order to make more money.
> I met many of his patients over the ensuing years who had also
> been hurt and helped by him.  Everyone agreed not only about his
> expertise, but also his ethics.  Occasionally someone would come
> out from the treatment room, and not stop to pay for their
> treatment.  When I asked him about it, he said 'I treat some people
> for free who can't afford to pay me.'   That is hard to find.

Lynne Norwood letter, attached at A-19.

## II.    PERTINENT CIRCUMSTANCES OF THE OFFENSE

For the purposes of this sentencing memorandum, Mr. Hackett will focus on circumstances not previously presented to the Court through trial, hearings, and other court proceedings.  Mr. Hackett maintains his standing objection to the government's spin on facts.

First and foremost, Mr. Hackett did not join the Oath Keepers for any political purpose, and he certainly did not join the organization to oppose any governmental action or authority. In the summer of 2020, when the Coronovirus pandemic was raging and still relatively new, Sarasota experienced the same rioting and violence occurring all across the country following George Floyd's murder in broad daylight.  Local news media, engaging in fear mongering, warned of dangerous Black Lives Matters riots and deadly, violent confrontations caused by members of Antifa.

11

Mr. Hackett's backyard abuts a road, and across that road is a commercial shopping complex.  He and his family can see the shopping complex from their back door; they vividly recall the night when rioters and looters attacked various shops in the complex.  They listened, fearfully, as the sounds of sirens and helicopters got closer to them; they hunkered in their home not knowing whether the vandals would cross that road and enter their residential community, their backyard.  Mr. Hackett was plagued by insecurity: he did not know how to protect himself, his family, or his household.  In their respective letters, his friends and family write about Mr. Hackett's love for the outdoors, his affinity for cycling and hiking and camping.  Notably absent from all descriptions of his hobbies and interest is the subject of firearms.  Mr. Hackett is not a hunter, he had no history of engaging in shooting for sport, and he had no specialized experience with firearms for protection.  Mike Adams testified at trial about Mr. Hackett's inexperience.

During the pandemic, scared by events he witnessed in his literal backyard, Mr. Hackett discovered the Oath Keepers and believed he could learn self, family, and community protection from its members.  Mr. Hackett is a follower, not a leader.  *See* Stephen Edwards letter, attached at A-13; *see also,* Lois Winkler letter, attached at A-25 ("Joe is certainly not a leader in my opinion but rather a follower.")  He joined the organization seeking instruction and guidance from those he perceived to be more experienced than him.

Tim Duncan, a patient and friend of 10-12 years, writes that

> [s]ince Joe's arrest, I am confident he has come to the conclusion that associating with unknowns could create problems.  I am confident that Joe was led to believe he was only with Oath Keepers in order to help individuals owning their own business to protect their properties and businesses from being robbed, looted, burned or broken into.  In no way did he ever think that his trip to Washington DC was for anything else.  The charges against him for this trip to DC are so unlike his character.  He has no military background and I never can to this day see how his involvement

> went from supporting others to attacking others.  Again, this
> [charge] does not fit his character at all.

Timothy Duncan letter, attached at A-10.

Stephen Edwards, a friend for over 20 years, shares the following:

> Joe has told me if he could turn back time he would never have
> gone anywhere near the events of January 6th. He has never even
> spoken to me of any political beliefs. He has never shown any
> signs of violence towards anyone that I have ever seen or heard
> about.
>
> In fact, I was absolutely flabbergasted when I heard that he had
> been arrested for being in the Capital Building on January 6th. My
> first thought was the only way Joe would hurt anyone is by licking
> them to death, he is like a Labrador that just loves everyone.
> I believe this group of people he got involved with used his kind
> aligning nature and used him for their own ends. Joe is a follower
> not a leader.

Stephen Edwards letter, attached at A-13.

Jodi Webber, who has known him for 14 years, writes that she remembers "Joe telling me
that he became very concerned for his family's safety when there were riots not too far from his
quiet neighborhood.  He said he could hear guns being shot.  I know Joe will never do anything
like this again."  Jodi Webber letter, attached at A-24.  Jim Easley writes that, "[i]n the few times
I have talked with Joe since that fateful day I know he sincerely regrets the way that day
unfolded – riotous and destructive more than anyone could have imagined.  He and his family
have suffered extreme hardships – personally and financially – as a result."  Jim Easley letter,
attached at A-11.

### III.   COLLATERAL CONSEQUENCES MR. HACKETT IS EXPERIENCING

Mr. Easley is right; Mr. Hackett and his family have, indeed, suffered extreme hardships
as a result of his arrest, prosecution, conviction, and they will likely continue to impact him and
his family for the rest of his life.  It is true that all convicted individuals suffer collateral

consequences, and, typically, Courts don't give great weight to those consequences in fashioning the appropriate sentence. Mr. Hackett respectfully submits that this case is far different than the typical or ordinary; he submits that the extraordinary weight of collateral consequences far exceeds his own conduct and wrongdoing and he specifically asks the Court to factor in the myriad ways he has been – and will continue to be – punished as a result of traveling with the Oath Keepers to Washington DC in January 2021.

When the government charged Mr. Hackett with seditious conspiracy alongside Oath Keeper leader Stewart Rhodes, the Department of Justice issued a press release and a copy of the unsealed Indictment in the instant matter. *See* Exhibit C, attached hereto. Although the press release accurately characterizes the Oath Keepers as a "large but *loosely organized* collection of individuals," the remainder of the press release reads as though the charged co-conspirators were a highly-coordinated, very organized group of individuals with a shared plan, with unity of purpose. This, Mr. Hackett submits, is misleading in light of the evidence. As the prosecution moved forward – in a proceeding that generated substantial media attention and public interest – the government continued to publicly attribute the conduct of one individual to all charged defendants. Quite simply, the prosecution enabled irresponsible reporting. For example, following an evidentiary hearing relating to the first trial, a local television station picked up the story and reported that "Oath Keeper had 'death list' naming Georgia election officials leading up to Jan. 6 attack, DOJ says" while showing photo insets of just four individuals: Mr. Hackett, Stewart Rhodes, Jessica Watkins, and Graydon Young. Exhibit D, attached hereto, is a screenshot of the reporting that Mr. Hackett's wife took when she saw the story. The implication was that Mr. Hackett was among a core group of people who maintained this "death list."

14

Unsurprisingly, Mr. Hackett and his family received threats and harassing communications, *mailed to their home*, from June 2022, to February 2023.  Exhibit B, attached hereto, is a compilation of post cards received by mail at his home.  A post card bearing a postmark date of July 11, 2022, warns,

> We true American patriots won't rest until our DOJ has squashed every last one of you J6 insurrectionists like the seditious cockroaches that you are.  That's not a threat; it's a promise!  Buckle up, buttercup, American justice is coming!

*Id.*

Another post card, this one postmarked August 1, 2022, warns,

> You know who else have taken oaths which they intend to keep: Prosecutors at the Dept. of Justice.  They solemnly swore that they will preserve, protect and defend the U.S. Constitution against ALL enemies, foreign AND DOMESTIC: Domestic enemies like violent insurrecionists [sic], like fascist trumptards, like law-breaking MAGA maggots, like seditious oaf weepers.  Make no mistake, oaf weeper, American justice is coming for you.

*Id.*

Once he was released from custody in August 2021, Mr. Hackett was confined to his home on home incarceration with strict conditions.  He was not allowed to work; as a result, he had to close his chiropractic practice and has not been able to work to support himself or his family since.  Perhaps the most tragic of all the collateral consequences is that he may never again be able to restore his license with the Florida Board of Chiropractic Medicine.  Practicing chiropractic care was so much more than a livelihood to Mr. Hackett; it was his life's purpose, his passion.  He has resigned himself to the very real possibility that he will never again be permitted to practice his craft.

As a direct result of being charged alongside leader Stewart Rhodes, Mr. Hackett was named a defendant in civil litigation initiated by the District of Columbia, 21-cv-03267, suing

him for damages in connection with the events on January 6, 2021.  In light of his guilty criminal

verdict, it is practically a foregone conclusion that he will also be found civilly liable.

## IV.    OBJECTIONS TO THE FINAL PRESENTENCE REPORT

Mr. Hackett maintains all of the objections submitted to the draft PSR which are

summarized in the addendum to the final PSR.  In addition to those objections already raised,

Mr. Hackett notes objections to paragraphs 173 and 185 in the final PSR.  While paragraphs 173

and 173a are technically accurate, Mr. Hackett asks the final report be modified to reflect that he

is currently experiencing symptoms of depression and anxiety as he awaits his final sentence

from the Court.  With respect to paragraph 185, Mr. Hackett did submit a completed Financial

Statement and Net Worth Statement to the Probation Office, through counsel, on April 27, 2023.

His submission was not timely, but he did complete and submit the requested forms.

During the presentence investigation process, Mr. Hackett, through counsel, explained

several times that he was experiencing difficulties obtaining the necessary information because

he was not allowed to use an internet-connected device, he and his wife maintain separate

financial accounts and information, and many of his accounts had closed due to inactivity

between May 2021, and March 2023.  Compounding those logistical difficulties, as previously

described, Mr. Hackett lapsed into a depression and simply couldn't complete the financial forms

in a timely fashion.

## V.    MISCELLANEOUS LEGAL ARGUMENT

Mr. Hackett is aware of sentencing documents submitted in unrelated cases that cite to

information he wishes the Court to take into consideration prior to his sentencing hearing.  For

economy and efficiency, he will cite to memoranda submitted in unrelated cases without

reproducing the voluminous materials here.  Attorney Kira Ann West, in a sentencing

memorandum submitted on behalf of Defendant, Matt Wood, cited to numerous media reports following the November 2020 election; although Mr. Wood's case and conduct is wholly distinguishable from Mr. Hackett's case, he adopts and joins the argument presented by Ms. West that dangerous misinformation, generated by the President of the United States and echoed by individuals in power at the highest levels, was broadcast prolifically. *See* Matt Brown Sentencing Memorandum, 21-223-APM (ECF 56, November 7, 2022), Section A, Media Reports of Stolen Election, pp. 3-9.

At his sentencing hearing, Mr. Hackett will also address the sentences imposed in a variety of other January 6 cases in making an argument regarding avoiding unwarranted sentencing disparities. In criminal number 21-119-CJN, Attorney F. Clinton Broden submitted a sentencing memorandum on behalf of Defendant Garret Miller. In Section E of that memorandum, Mr. Broden cited to and briefly summarized the facts and final sentences of numerous January 6 cases. *See* 21-119-CJN (ECF 143, February 16, 2023), Section E, Avoiding Unnecessary Sentencing Disparities, pp. 20-39.

## VI.   <u>CONCLUSION</u>

For all the reasons set forth more fully herein, and for all the reasons that will be further articulated at his sentencing hearing, Mr. Hackett respectfully urges the Court to adopt his guideline calculation and reject the assessments proffered by the government and U.S. Probation: base offense level 14 pursuant to U.S.S.G. § 2J1.1, +2 pursuant to U.S.S.G. §3C1.1, for a total offense level of 16. With criminal history category I, the resulting advisory guideline range of imprisonment is 21-27 months. Further, he will ask the Court to grant his motion for downward variance.

Lastly, Mr. Hackett respectfully asks the Court to accept this Sentencing Memorandum as timely filed.  The Court set a deadline of May 5, 2023, for all sentencing memoranda; Mr. Hackett filed – and the Court granted – his request to extend the time for filing his sentencing memorandum to May 7, 2023.  With apologies to the Court, he submits the foregoing one day late.

Mr. Hackett's conduct, at all times before, during, and after January 6, 2021, was non-destructive, non-violent, and non-aggressive.  He is a follower, not a leader.  He is a healer, not a destroyer.  He prays the Court will see him for who he is: a highly regarded and skilled chiropractic practitioner, a loving father and husband, a kind and caring friend, and a selfless person.

Respectfully submitted,

     /s/ Angela Halim
Angela Halim, Esq.,
3580 Indian Queen Lane
Suite 10A
Philadelphia, PA  19129
(215) 300-3229
angiehalim@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>     /s/ Angela Halim  </u>
Angela Halim, Esq.

Dated:  May 8, 2023